Donahue, J.
The record discloses a conflict of evidence upon the issues presented to the trial court for determination. That court found for the plaintiff and for The Farmers National Bank upon all the issues joined by the pleadings. The circuit court did not disturb the judgment of the common pleas court as to its findings on the issues of fact, but reversed for error of that court in its application of the law to the facts found. This judgment of the circuit court, in effect sustaining the finding of the common pleas court upon the evidence, eliminates from our consideration the issues raised by the first, fourth and fifth defenses of the answer of the insurance company. The further effect of these judgments is to sustain the allegations of the reply filed by the plaintiff and defendant bank to the second and third defenses so far as the facts in dispute therein are concerned, leaving for consideration practically the same questions as would have been submitted upon a demurrer to the reply to the second and third defenses. In order to determine the .law applicable to this state of facts it is important to notice the contract ■ sued upon. Attached to and made a part of this policy of insurance is a slip or paster upon which the following is written:
*329 “$2,000.00 On Leaf Tobacco, packed or in process of packing, sorting, storing and resweating; and on cases full or empty, his own or held by him in trust, or on commission, or sold but not removed, or which by the terms of any contract he may agree to keep insured; all while contained in the frame shingle-roof building lot No. 647, East Fourth St., Greenville, Ohio. Loss, if any, payable to the Farmers National Bank as its interest may appear. * * * Loss, if any, payable to the assured, or to order hereon for collateral purposes only. * *
This provision is as broad and comprehensive as it is possible to write it in the English language. There is no representation or statement here that J. E. Turner is the sole owner of the property insured, nor does the language used require that he should be. It is sufficient if it be held by him in trust or on commission or sold and not removed, or if he have a contract with a third party to keep the property insured. This provision is in direct conflict with the further provisions printed in the body of the policy that “If the interest of the insured in the property be not truly stated herein” or “If the interest of the insured be other than unconditional and sole ownership,” or “If any change other than by death of the insured takes place in the interest, title or possession of the subject of insurance,” the policy will be void. The first question that arises is as to which of these conflicting covenants shall obtain in the disposition of this case. The right of private contract is a constitutional right that it is the duty *330 of the court to guard zealously. The terms and conditions are written into a contract for the purpose of being observed by the parties thereto. Courts 'must not make contracts for parties, nor exercise a guardianship over contracting parties but when the parties have made a contract containing ambiguous provisions, or conflicting covenants, the court must construe the contract as nearly as may be to effect the purposes of it, and to meet the intentions of the contracting party at the time of the execution of the contract. Usually in contracts written contemporaneously with their execution, the later provisions, if in conflict with former provisions, should obtain. But that is not the correct rule for the interpretation and construction of printed forms of contract prepared or used by one of the contracting parties in his business, leaving blanks therein for inserting other and further provisions to make it applicable to the immediate business that may be the subject of the contract. The true rule in the interpretation of such a contract is that the covenants then written, either in the contract, endorsed thereon, or appended thereto, will control and that any printed portions of a printed form of contract made and prepared for general use in conflict with these provisions written at the time of its execution must fail, and full effect be given to those parts that were written coincident with the execution of the contract.
There is no controversy here made that the agents, Hough & Reigel, had not the authority to make the contract sued upon. It is admitted in the answer of the insurance company that it did *331 execute and deliver this policy of insurance to J. E. Turner. Counsel for the insurance company, however, in their brief, question the authority of these agents, and call our attention particularly to the evidence touching the original power and authority delegated to them by the insurance company. But the authority of an agent is not always measured by the original grant of power, but also by the growth and development of the business relation between principal and agents, and daily acts of the agent in relation to the principal’s business, of which the principal had knowledge, and from this record, and from the policy itself, it clearly appears, that these agents had authority to waive any provision or condition of this policy, which by the terms of the policy may be the subject of agreement, the only limitation on their power being that such waiver “shall be written upon or attached to the policy.” Having the authority to waive these conditions, provided only that the waiver appear in writing on the policy itself, they would have the power to insert in this policy or attach thereto a condition in conflict with these printed conditions later found in the policy, which written provision would control the construction of the policy itself. In other words, the effect of this written provision in conflict with the provisions that might be waived by .the agent would be in effect a written waiver of these provisions, and, therefore, falls within the direct letter and meaning of the contract itself.
This construction of this contract is practically the end of the case, however, the common pleas court found upon the evidence that there had been *332 a mutual mistake of the parties and reformed the contract. Having so found it was perfectly proper to enter a decree of reformation inserting the name of Turner Brothers as the insured instead of J. E. Turner, and that finding and decree also disposes of the defense interposed by the insurance company touching the violation of the provisions that “If the interest of the insured in the policy be not truly stated herein” and the provision “If the interest of the insured be other than unconditional and sole ownership” the policy should be void. .In view of the construction we have given this contract this decree of reformation was not necessary in order to permit the recovery by J'. E. Turner or by the Farmers National Bank.
This construction of the policy applies with equal force to the provision against the giving of a chattel mortgage, for the greater includes the less. If the insured might make an absolute sale of the property and retain this insurance until the same should be removed from the warehouse then undoubtedly they could make a conditional, sale, for in the former case they would part with all insurable interest in the property and the latter case they would still retain an insurable interest, subject only to the lien of the chattel mortgage. In fact from a careful consideration of this contract, and this portion of it written at the time of its execution, it fully appears that all these provisions printed later in the policy and in conflict therewith and pleaded by the defendant insurance company as a defense to this action were waived in writing by the agent of the company in the policy itself at the time the policy was written, *333 and, therefore, the judgment of the common pleas court was right. This disposes not only of the contentions made as to the ownership of the insured property but also the contention as to the giving of both chattel mortgages. But there is a further reason why the giving of the chattel mortgage to the Farmers National Bank cannot be interposed as a defense herein. As already said, these agents Hough & Reigel, whether they be denominated general agents or not, had full authority to deal with this contract. We think this clearly appears from the evidence in the record, perhaps not from any one part of it, but from the evidence as a whole, and especially the evidence of Mr. Hough on page 135, where he says: “We have authority so to do, to change the conditions of those policies, as I stated awhile ago. It is done every day.” When information reached Hough & Reigel of the giving of these chattel mortgages, they notified the bank that the giving of these mortgages was in conflict with the provision of the policy, and thereupon this policy was returned to them. Mr. Sigafoos, cashier of the bank, testifies on page 85 of the record that he said to Mr. Hough: “If they are void we want you to cancel them and we will get other insurance.” To the same effect is the testimony of Mr. Turner. Thereupon Mr. Flough said that if other companies could carry this insurance there was no reason why his company could not; that he would hold the policy until he could communicate with them. In this respect we think Hough & Reigel were acting for the company and within the scope of their employment, and the return of these policies to these *334 agents was the return of the policies to the company itself. True, what Mr. Hough said at that time with reference to keeping these policies in force would avail nothing were a waiver of these conditions not already written in the policy at the time of its execution. Mr. Hough at once notified the company of the giving of this chattel mortgage to the bank, but it does not appear that he notified the company as to the giving of the chattel mortgage to the Turner women.
It would also appear that he did not notify the company that the policy had been returned, but that is not important. He had authority to represent the company in accepting the return of the policy, and his failure to notify the company of that fact is in no wise important. His act was the act of the company in so far as the return of this policy was concerned, and the subsequent conduct of the company must be considered in that light. The company then having possession of the policy of insurance, and possession of the unearned premiums were required within a reasonable time to return either the premium or the policy. The company now having actual knowledge of the mortgage given to the bank, and being. charged' with the knowledge that the policy had been returned to the agent, failed to return the unearned ■ premium and neglected to advise its agent within a reasonable time, one way or another, with reference thereto, and thereupon the agent returned the policy to the bank with the verbal assurance that it was all right, in full force and fully protected the bank from loss. This conduct of the company would forever estop it from setting up *335 the defense of the chattel mortgage given to the bank, whether the policy contained a written waiver or not, but as already stated the policy did contain written provisions in conflict with the provisions pleaded by the company in its defense to this action, which written conditions amount to a waiver in writing of these provisions. These agents had the right to make this contract originally. They had a right on the day they returned this policy to the bank to make a new contract of the same tenor and effect. If there were any possibility that this written provision was not originally intended to comprehend and include a waiver as to these chattel mortgages, there could be no reasonable contention that at the time Hough & Reigel redelivered this policy to the bank, but that they were intended to cover and include everything then prominent in the minds of the contracting parties and then a matter of controversy between them. This delivery of this contract at this time and under these circumstances must be held to amount to a new contract between the parties binding from the date of such redelivery, and must have the same construction and effect as if Hough & Reigel, having full knowledge of all questions touching ownership and liens, had then issued on the part of .their principal a new policy of that date containing the same written provisions in conflict with these printed provisions with reference to ownership and-liens.
There is another question presented by this record, the correct 'solution of which is important in the determination of the rights of the parties.
*336 The Farmers National Bank in its reply pleaded the following condition and stipulation in the policy: “If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended hereto.”
And said bank further averred that there was neither written upon, or attached, or appended to such policy of insurance, in any way, any statement, endorsement, provision or condition providing that the prior conditions contained in the body of said policy of insurance should be applicable to the bank. This provision pleaded by the Farmers National Bank is ambiguous and uncertain and subject to more than one construction. It is contended by the insurance company that this means “That such conditions apply to the interest of the mortgagee except as modified or abrogated by a writing placed or appended to the policy.” If this contention be the correct one, then this provision in the policy is absolutely useless and unnecessary.
Given such construction, it could have no meaning or application whatever, nor could it modify the remaining covenants of the contract in the slightest degree. Without it, the terms and conditions printed in the body of the policy would apply to the mortgagee “except as they might be *337 modified or abrogated by a writing -placed upon or appended to the policy.” If it were left out, the contract would then be construed exactly the same as if it were written therein. The construction contended for by the bank is that the prior conditions named in the policy and applicable to the owner making the contract of insurance shall not be applicable to the mortgagee when the insurance company consents to the mortgage, unless it shall be specifically provided by a writing upon of attached, to or appended to such policy that such prior conditions contained in the body of the policy shall apply to the mortgagee. This construction would give effect to this provision and recognize that it was written into the policy for some purpose and would materially affect the rights of the parties to the contract. The plain rule of construction requires that every provision of a contract shall be given effect if possible. The claim of defendant in error here with reference to the proper construction of this provision simply eliminates it from the contract and makes- it purposeless and unnecessary, while the other construction gives it purpose, place and meaning.
There is another rule of construction equally applicable here and that with equal force determines the proper construction of this provision, and that is that where an individual or corporation is engaged in a particular line of business with the public and prepares or uses printed forms of contract for the purpose of effecting and carrying on that business; that if such individual, corporation or company place in such printed form of contract a printed condition of doubtful meaning *338 and susceptible of two constructions, one favorable to the party preparing or using the printed form of contract, the other construction favorable to the individual dealing' with him, a court coming to construe such contract should construe it most favorably to the one who had nothing to do with the preparation of the printed form of contract and most strongly against that party to the contract who prepared the same-, or used the same in the regular course of his business.
The proper construction of this contract under the rules above stated would entitle the Farmers National Bank to a judgment against the insur- . anee company.
The construction of the contract of insurance and the conclusion reached by this court upon such construction makes it unnecessary for us to- consider at length the claim of the insurance .company that the Farmers National Bank, if entitled to recover at all, could not recover more than a pro rata amount of its total claim against Turner Brothers in proportion of that claim to the entire amount of insurance written upon the property destroyed. The evidence discloses that there was a total loss of over $13,000; that the total insurance amounted in the aggregate to $11,000. The plaintiffs below were entitled to recover the full amount of this insurance, but by the terms of this policy the loss, if any, was to be paid to the Farmers National Bank, so that the.Farmers National Bank was entitled to recover the full face of the policy, and the satisfaction by the insurance company of a judgment in favor of the Farmers National Bank against it for that amount would be a *339 full acquittance as to any claim of the Turner Brothers under this policy of insurance, and they must look to the bank for an accounting, if it should receive from the total insurance in force more than was owring to it by the Turner Brothers.
Judgment'of the circuit court reversed; judgriient of the common pleas affirmed.

Reversed.

Spear, C. J., Price and Johnson, JJ., concur.